**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

MICHAEL KNEITEL,

                        Plaintiff,

      - v -                                        Civ. No. 9:05-CV-0030
                                                                 (GLS/RFT)

GLENN S. GOORD, RICHARD D. ROY,
ANTHONY J. ANNUCCI, DEBRA R. JOY,
BARBARA KING, MICHAEL T. McHALE,
ANNE BYERWALTERS, GEORGE E. PATAKI,[1]

                        Defendants.

**APPEARANCES:**                                   **OF COUNSEL:**

MICHAEL KNEITEL,
Plaintiff, *Pro Se*
759 East 10th St.
Apt. 3C
Brooklyn, N.Y. 11230

HON. ANDREW M. CUOMO                    JAMES SEAMAN, ESQ.
Attorney General for the State of New York     Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, N.Y. 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

**REPORT-RECOMMENDATION and ORDER**

     *Pro se* Plaintiff Michael Kneitel brings this civil rights action pursuant to 42 U.S.C. § 1983, claiming that his due process and equal protection rights under the Fourteenth Amendment were violated while he was in the custody of the New York Department of Correctional Services (DOCS). Dkt. No. 1, Compl. at pp. 6-11. Defendants now move to dismiss the Complaint under Federal Rule

---

[1] George E. Pataki is a named Defendant in this action, however he has not been served with process. *See* Dkt. No. 26.

of Procedure 12(b) for failure to state a claim upon which relief can be granted. Dkt. No. 21, Mot. to Dismiss. Plaintiff opposes the Motion. Dkt. No. 32, Pl.'s Resp. to Defs.' Mot. to Dismiss. For the reasons that follow, it is recommended that Defendants' Motion to Dismiss be **granted**.

## I. FACTUAL BACKGROUND[2]

Plaintiff's claims stem from the alleged denial of his applications to participate in the Temporary Work/Release Program while he was in DOCS custody. At all times relevant to this claim, Plaintiff was serving a three and a half year sentence after being found guilty of Criminal Possession of a Weapon in the Second Degree (CPW-2) in violation of New York State Penal Law § 265.03(2). Compl. at p. 6. CPW-2 is defined in Penal Law § 70.02(1)(b) as a violent felony, and under New York Correction Law § 851(2), inmates under sentence for having committed a violent felony may not be eligible to participate in a work release program. Based on the above, and their interpretation of Executive Order 5.1,[3] several of the named Defendants in this action determined that Plaintiff was ineligible for consideration of work release participation and therefore denied his application to participate in the temporary release program. *See* Dkt. No. 21, Mot. to Dismiss, James Seaman, Esq., Affirm. dated Mar. 14, 2007, Ex. A, Pl.'s Art. 78 Pet. In essence, Defendants concluded Plaintiff was ineligible to apply for temporary release consideration. *Id*. at ¶ 20.

---

[2] The following facts, which do not appear to be contested were derived from Plaintiff's Complaint, which, on a motion to dismiss, must be taken as true where applicable. This Court takes judicial notice of documents filed in connection with Plaintiff's Article 78 Petition as well as any other document Plaintiff made reference to in his Complaint. Thus, while matters outside the pleading have been considered by this Court, we see no need to convert the present Motion to one for summary judgment. *See infra* Part II.A.

[3] Executive Order 5.1 was signed on October 13, 1995, by Governor Pataki and authorized the Commissioner of the Department of Correctional Services (DOCS) to "promulgate, modify, adopt or rescind any rules or regulations, or emergency rules or regulations, as may be necessary from time to time to prevent the future transfer to any temporary release program or residential treatment facility of any inmate sentenced as a violent felony offender convicted of a crime involving the infliction of serious physical injury, the use or threatened use of a dangerous instrument or the use or threatened use of a deadly weapon." N.Y. COMP. CODES R. & REGS. tit. 9, § 5.5.

Plaintiff argued in his various applications that the aforementioned proscription against violent felony offenders did not apply to him because the criminal act he committed did not involve any violent or otherwise threatening conduct. Compl. at p. 6. Plaintiff called Defendants' attention to Title 7 of the New York Rules and Regulations concerning the temporary/work release program, which provides that

> An inmate who can provide the [Temporary Release Committee] chairperson with a court-generated document or document generated by the Office of the District Attorney which establishes that his/her current commitment is for a subdivision of one of the above-listed crimes [which include CPW-2] which did not involve either the use or threatened use of a deadly weapon or a dangerous instrument or the infliction of a serious physical injury as defined in the Penal Law, shall be otherwise eligible for temporary release.

N.Y. COMP. CODES R. & REGS. tit 7, § 1900.4(c)(1)(iii).

Plaintiff furnished a letter from Supreme Court Justice Albert Tomei verifying the nonviolent nature of the underlying conduct leading to Plaintiff's conviction. *See* Compl. at p. 6.[4]

Despite Plaintiff's several protestations,[5] he was repeatedly denied entry into the program based on his violent felony offender status. Dkt. No. 21-5, Defs.' Mem. of Law, at pp. 2-3. On March 17, 2003, Plaintiff commenced an Article 78 proceeding in State Supreme Court, Albany County. The Honorable Joseph R. Cannizzaro, New York Supreme Court Justice, held that inasmuch as the Defendants failed to follow N.Y. Regulations and to consider Plaintiff's application with Justice Tomei's letter, the determinations that Plaintiff was ineligible to participate in the temporary/work release program were incorrect, and therefore reversed and vacated the Defendants'

---

[4] In his letter, Supreme Court Justice Tomei wrote, "[t]he facts of your case did not involve any accusation that you actually used the weapon in a dangerous manner, caused injury to anyone or threatened to do so. The gun was recovered in your bedroom during a search." Compl. at p. 6.

[5] For a summary of the dates of Plaintiff's applications and their subsequent denials, *see* Dkt. No. 21, Seaman Affirm., Ex. B, Art. 78 Decision & Order, dated Dec. 15, 2003, at pp. 2-5.

previous denials. Dkt. No. 21, Mot. to Dismiss, Ex. B, Art. 78 Decision & Order, dated Dec. 15, 2003, at p. 12. However, Justice Cannizzaro specifically stated that although Plaintiff appeared to be an eligible inmate, that "does not make him automatically entitled to temporary release, for the temporary release committee must first determine that petitioner's temporary release is 'consistent with the safety of the community and the welfare of the applicant.'" *Id*.

Following the Article 78 Decision and Order, Plaintiff was deemed eligible to apply for work/release consideration, although his applications to that program were ultimately denied. Dkt. No. 32, Pl.'s Resp. to Defs.' Mot. to Dismiss at p. 3; Compl. at pp. 7-8. According to Plaintiff's submissions, the Temporary Release Committee (TRC) interviewed him and later denied one of his applications[6] because it evaluated him as a "high risk for approval" based on the crimes he committed. Pl.'s Resp. to Defs.' Mot. to Dismiss at pp. 3 & 20. Plaintiff's appeal of that decision was also denied due to his criminal history.[7] *Id*. at p. 21.

Plaintiff was eventually released on parole, and commenced this lawsuit in federal court soon thereafter.[8]

## II. DISCUSSION

---

[6] It is unclear based on our review of the record how many times Plaintiff actually applied for the temporary/work release program after the Article 78 decision came down, nor is it clear which application he is referring to in his Response to the Defendants' Motion to Dismiss. What is clear is that subsequent to the Article 78 decision he was allowed to apply to the program, but all of his applications and appeals were denied. *See* Compl.

[7] The appeal decision has not been made available to the Court, but according to Plaintiff's own submissions, that decision stated the following: "Your legal history dates to 1986 and includes two conviction[s] for criminal possession loaded firearm 3 as well as convictions for menacing 3 and act[ing] in [a] manner [to] injure [a] child less than seventeen. The instant offense, CPW 2, involved the possession of multiple weapons and ammunition. The serious nature of your criminal activity renders you an unsuitable candidate for work release." Pl.'s Resp. to Defs.' Mot. to Dismiss at p. 21.

[8] Plaintiff was released on parole on January 4, 2005, *see* inmate information *available at* http://nysdocslookup.docs.state.ny.us/; he filed his Complaint in this case on January 10, 2005, *see* Dkt. No. 1. Plaintiff also apparently filed another Article 78 Petition in 2004, but later withdrew it. *See* Compl. at p. 3.

## A. Standard of Review

A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell. Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007). Furthermore, "the court must accept as true the factual allegations in the complaint, and draw all reasonable inferences in favor of the plaintiff." *Harris v. City of New York*, 186 F.3d 243, 247 (2d Cir. 1999); *see also Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002) (citations omitted). Additionally, "[i]n assessing the legal sufficiency of a claim [under 12(b)(6)], the court may consider those facts alleged in the complaint, documents attached as an exhibit thereto or incorporated by reference . . . and documents that are integral to plaintiff's claims, even if not explicitly incorporated by reference." *Green v. New York State Dep't of Corr. Servs.*, 2003 WL 22169779, at *1 (N.D.N.Y. Aug. 27, 2003) (internal quotation marks and citations omitted) (alterations in original).

"As the judgment of a state court is 'capable fo accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned,' FED. R. EVID. 201(b)(2), a court may take judicial notice of it and consider it in deciding a 12(b)(6) motion." *Wachtmeister v. Swiesz*, 2002 WL 1585526, at *2 (N.D.N.Y. June 12, 2002); *see also Marcus v. AT & T Corp.*, 938 F. Supp. 1158, 1164-65 (S.D.N.Y. 1996) (court may take judicial notice of public documents even if not included in or attached to complaint); *Shuttlesworth v. City of Birmingham, Ala.*, 394 U.S. 147, 157 (1969) (taking judicial notice of related cases between same parties).

Pleadings submitted by *pro se* litigants "should be 'construed liberally,' *Tapia-Ortiz v. Doe*, 171 F.3d 150, 152 (2d Cir. 1999) (per curiam)," and a complaint "should not be dismissed unless 'it is clear that the plaintiff would not be entitled to relief under any set of facts that could be proved

consistent with the allegations[,]'" *Phillips v. Girdich*, 408 F.3d 124, 127 (2d Cir. 2005) (quoting *Boddie v. Schnieder*, 105 F.3d 857, 860 (2d Cir. 1997)). A "dismissal on the pleadings is never warranted unless the plaintiff's allegations are doomed to fail under any available legal theory." *Phillips v. Girdich*, 408 F.3d at 128.

### B. Collateral Estoppel

Defendants raise the affirmative defense of collateral estoppel, asserting that Plaintiff is barred from re-litigating issues that were decided before Judge Cannizzaro in the Article 78 proceeding. Defs.' Mem. of Law at pp. 6-7. Pursuant to "the Full Faith and Credit Statute, 28 U.S.C. § 1738, federal courts must give a prior state court judgment the same preclusive effect that such a judgment would be given in the courts of the state from which the judgment emerged." *Giakoumelos v. Coughlin*, 88 F.3d 56, 59 (2d Cir. 1996) (citing *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 466 (1982)). This rule applies to actions brought under § 1983. *Id.* (citing *Allen v. McCurry*, 449 U.S. 90, 103-04 (1980) (issue preclusion) & *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 84-85 (1984) (claim preclusion)). Therefore, this Court must analyze New York law in order to determine if there is preclusion based on a judgment rendered in the Article 78 proceeding. *Id.*

> Under New York law, the doctrine of collateral estoppel, or issue preclusion, applies when a litigant in a prior proceeding asserts an issue of fact or law in a subsequent proceeding and (1) the issue "has necessarily been decided in the prior action and is decisive of the present action," and (2) there has been "a full and fair opportunity to contest the decision now said to be controlling." *Schwartz v. Public Administrator*, 24 N.Y.2d 65, 71, 298 N.Y.S.2d 955, 246 N.E.2d 725 (1969); *see also Colon v. Coughlin*, 58 F.3d 865, 869 (2d Cir. 1995).

*Id.*; *see also LaFleur v. Whitman*, 300 F.3d 256, 271-72 (2d Cir. 2002).

The burden of proving whether the issues are the same "rests squarely on the party moving for preclusion." *LaFleur v. Whiteman*, 300 F.3d at 272 (citation omitted). However, the opposing

party has the burden "to show that it did not have a full and fair opportunity to litigate the issue in the prior proceeding." *Id.* at 274 n.7 (citing *Ryan v. New York Tel. Co.*, 467 N.E.2d 487, 491 (N.Y. 1984)).

Generally, a judgment rendered in an Article 78 proceeding will be given preclusive effect as to the issues decided therein. *Watkins v. Annucci*, 2006 WL 722005, at *4 (S.D.N.Y. Mar. 22, 2006). Although an Article 78 judgment will not have preclusive effect when that judgment is constitutionally defective, the "state proceedings need do no more than satisfy the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause in order to qualify for the full faith and credit guaranteed by federal law." *Giakoumelos v. Coughlin*, 88 F.3d at 61(quoting *Kremer v. Chem. Constr. Corp.*, 456 U.S. at 481).

In his Article 78 proceeding, Plaintiff claimed to have suffered violations of his due process and equal protection rights. *See* Pl.'s Art. 78 Pet. at ¶ 25. Although the state court did not specifically address Plaintiff's equal protection claims,[9] that court specifically addressed and rejected his due process claims. Art. 78 Decision & Order at p. 13. Justice Cannizzaro stated that "contrary to his assertions, petitioner did not have a protected liberty interest with respect to any temporary release program inasmuch as he had never been approved for any program and had never started participating in any program." *Id.* This Court finds that Plaintiff is collaterally estopped from raising constitutional challenges arising out of his applications which were the basis of his first Article 78 petition as such issues were clearly adjudicated by the state court.

To the extent that Plaintiff's due process claims before this Court encompass any alleged violations that occurred as a result of Defendants' rejection of Plaintiff's applications *after* he was

---

[9] We consider Plaintiff's equal protection claims below.

declared eligible by the Article 78 decision, those claims must also fail because Plaintiff had no protected liberty interest in participating in any temporary release program.

Liberty interests protected by the Fourteenth Amendment's Due Process Clause are derived from the Due Process Clause itself or from state statute or regulations. *Arce v. Walker*, 139 F.3d 329, 333 (2d Cir. 1998) (citing *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)). The Supreme Court has narrowly circumscribed the scope of liberty interests emanating from the Due Process Clause to protect "no more than the 'most basic liberty interests in prisoners.'" *Id*. (quoting *Hewitt v. Helms*, 459 U.S. 460, 467 (1983)). In addition, the Supreme Court has specifically stated that "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of the Nebraska Penal & Corr. Complex*, 442 U.S. 1, 7 (1978).

As per any potential liberty interest created by statute or regulations in the State of New York, the governing statute clearly states that "[p]articipation in a temporary release program shall be a privilege. Nothing contained in this article may be construed to confer upon any inmate the right to participate . . . in a temporary release program." N.Y. CORRECT. LAW § 855(9). In addition, Plaintiff does not claim, and nor do these facts suggest, that he suffered from an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). In that regard, the Second Circuit Court of Appeals held in *Lee v. Governor of the State of New York*, 87 F.3d 55, 58 (2d Cir. 1996) that inmates who never participated in a temporary release program and were subsequently declared ineligible by the same Executive Order which is the subject matter of this case did not have a state-created liberty interest to participate in such program under *Sandin*. Thus, Plaintiff had no constitutional or state-created liberty interest in

participating in the temporary release program.

As such, it is recommended that Defendants' Motion to Dismiss on these claims be **granted**.

### C.  Equal Protection Claim

Plaintiff asserts that the Defendants violated the Equal Protection Clause when they repeatedly denied his applications to participate in the temporary/work release program. Compl. at p. 8. The Equal Protection Clause of the Fourteenth Amendment states no "State [shall] deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1.  It further "directs that all persons similarly circumstanced shall be treated alike." *Plyler v. Doe*, 457 U.S. 202, 216 (1982) (citation omitted).

The Second Circuit has held that in order for a prisoner to state a violation of the Equal Protection Clause, the prisoner "must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination." *Phillips v. Girdich*, 408 F.3d at 129 (citation omitted).  A prisoner "also must show that the disparity in treatment cannot survive the appropriate level of scrutiny which, in the prison setting, means that he must demonstrate that his treatment was not 'reasonably related to [any] legitimate penological interests.'" *Id.* (quoting *Shaw v. Murphy*, 532 U.S. 223, 225 (2001)).  An Equal Protection claim may be brought "by a 'class of one' where a plaintiff alleges that [] he has been 'intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *African Trade & Info. Ctr., Inc. v. Abromaitis*, 294 F.3d 355, 362-63 (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).  However, the plaintiff need not specifically identify others who were similarly situated and treated differently. *DeMuria v. Hawkes*, 328 F.3d 704, 706 (2d Cir. 2003).

In the instant case, Plaintiff does not claim the Defendants treated him differently than any

other similarly situated inmates. *See generally* Compl. In addition, other than Plaintiff's conclusory statements, there is nothing in the record to suggest that any of the Defendants invidiously discriminated against Plaintiff. Rather, the record indicates that the Defendants incorrectly designated Plaintiff as ineligible to apply to the program, and then later denied his applications outright. Because he has not alleged, and nor does the record reflect, that he was intentionally treated differently from other similarly situated inmates, Plaintiff has failed to make a viable equal protection claim. *See Phillips v. Girdich*, 408 F.3d at 129. We therefore recommend that Defendants' Motion to Dismiss this claim be **granted.**

### D. Qualified Immunity

Defendants plead the affirmative defense of qualified immunity. However, because we are recommending dismissal of Plaintiff's claims for failure to state a claim upon which relief can be granted, we need not address this defense. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries regarding qualified immunity.").

### E. Unserved Defendants

Under Federal Rule of Civil Procedure 4(c)(1), the plaintiff is responsible for service of the summons and complaint for each defendant within a specified time period. Specifically, the plaintiff must effectuate service of process within 120 days of the filing of the complaint. FED. R. CIV. P. 4(m).[10] Failure to properly serve any defendant in accordance with the Federal Rules will result in the court, upon motion or on its own initiative dismissing the case without prejudice as to that defendant. *Id*.

---

[10] Under the Local Rules for the Northern District of New York, a plaintiff must effectuate service within sixty (60) days. N.D.N.Y.L.R. 4.1(b).

In this case, there is no indication that the Defendant George Pataki was properly served. Although the courts must afford plaintiffs notice before they may dismiss a claim for failure to serve a defendant, FED. R. CIV. P. 4(m), in this case, because Plaintiff's claims lack merit, granting Plaintiff the opportunity to properly serve Defendant Pataki would be futile. Thus, it is recommended that Plaintiff's claims against Defendant Pataki be dismissed.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion to Dismiss (Dkt. No. 21) be **GRANTED**; and it is further

**RECOMMENDED**, that Plaintiff's Complaint (Dkt. No. 1) be **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).

RANDOLPH F. TREECE
United States Magistrate Judge

Date: January 15, 2008
Albany, New York